UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER ALICE COCKELS,

        Appellant,

v.

SALLIE MAE,

        Appellee.

_____/

Case No. 09-10674

Honorable Nancy G. Edmunds

**OPINION AND ORDER AFFIRMING BANKRUPTCY JUDGE'S FEBRUARY 10, 2009
ORDER SUPPLEMENTING FINDINGS OF FACT REGARDING DISCHARGE OF
DEBTOR'S STUDENT LOAN OBLIGATION AND DENYING DEBTOR'S MOTION
FOR RECONSIDERATION**

This is an appeal from a February 20, 2009 order issued by the Bankruptcy Court in

a Chapter 7 bankruptcy adversary proceeding brought by Appellant Jennifer Alice Cockels

("Debtor Cockels") against Sallie Mae ("Creditor").  The Bankruptcy Court's order

supplemented findings of fact and denied Debtor's motion asking the Court to reconsider

its earlier order specifying the portion of student loan indebtedness that it found non-

dischargeable under 11 U.S.C. § 523(a)(8).  (Bankr. Ct. Dkt. No. 56.)  Earlier, the

Bankruptcy Court had rejected Debtor's argument that § 523(a)(8) did not apply to her

because of her co-signor status and issued an order addressing whether excepting

Debtor's liability as a co-obligor on a student loan debt owed to Sallie Mae would cause

undue hardship, and taking the matter under advisement until it obtained information from

Debtor updating her current monthly income and expenditures.  (Bankr. Ct. Dkt. No. 47.)

Upon receipt of the requested information, the Bankruptcy Court issued an order granting

partial discharge of Debtor's student loan obligation. It determined that $9,500 of the student loan indebtedness is non-dischargeable pursuant to 11 U.S.C. § 523(a)(8) but all "principal in excess of $9,500.00 and all other interest, penalties, expenses, attorneys' fees and other related costs" were dischargeable under § 523(a)(8). (Bankr. Ct. Dkt. No. 54.)

Debtor's appeal raises two issues. First, whether the Bankruptcy Court erred when it interpreted § 523(a)(8) and held that it applied to unrelated, non-student co-obligors like Debtor. Second, whether the Bankruptcy Court erred when it made findings of fact based upon the Debtor's supplemental, updated information concerning her monthly income and expenses, determined that it would constitute an undue hardship for Debtor to repay the student loan indebtedness in its original amount and under its original terms, determined that she did possess the ability to repay a material portion of the indebtedness without suffering an undue hardship, and specified the portion of the student loan indebtedness it found non-dischargeable under § 523(a)(8) and the terms for repayment. For the reasons stated below, this Court concludes that the Bankruptcy Court properly construed § 523(a)(8) of the Bankruptcy Code, did not make findings of fact that were clearly erroneous, and properly determined that a portion of Debtor's student loan indebtedness was non-dischargeable under § 523(a)(8). The Bankruptcy Court's February 10, 2009 order is AFFIRMED.

## I.    Jurisdiction

Appellate jurisdiction is conferred on this Court by 11 U.S.C. § 158(a)(1) which states, "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; . . . of bankruptcy judges entered in cases and proceedings referred to bankruptcy judges under section 157 of this title. An appeal under

this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving."   Debtor has timely appealed the Bankruptcy Judge's February 10, 2009 order denying her motion for reconsideration.  *See* Fed. R. Bankr. P. 8001(a), 8002.

## II.   Appellate Standard of Review

This Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*.  *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.*), 106 F.3d 1255, 1259 (6th Cir. 1997).  The first issue raised in Debtor's appeal presents a question of statutory interpretation and thus presents a question of law subject to *de novo* review.  *See In re Pelkowski*, 990 F.2d 737, 739 (3d Cir. 1993).  The second issue Debtor raises presents a mixed question of law and fact.  As to the findings of fact made by the Bankruptcy Court, these are reviewed for clear error.  The question "[w]hether student loans pose an undue hardship is a legal question," however, and thus subject to *de novo* review.  *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 384 (6th Cir. 2005).  "*De novo* means that the appellate court determines the law independently of the trial court's determination."  *Meyers v. IRS (In re Meyers)*, 216 B.R. 402 (B.A.P. 6th Cir. 1998) (internal quotation marks and citation omitted).  "A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed."  *United States v. Mathews (In re Mathews)*, 209 B.R. 218 (B.A.P. 6th Cir. 1997) (internal quotation marks and citation omitted).

## III.   Facts

3

Debtor filed a voluntary Chapter 7 bankruptcy petition on April 18, 2007 and received a discharge of eligible debts on August 9, 2007. Listed on her schedules was a student loan debt owed to Creditor Sallie Mae. Debtor is liable on this loan as a co-signer. It is undisputed that the loan was not used for Debtor's education. The co-borrower on the loan was Cory A. Murawski, who was Debtor's fiancé at the time the loan was obtained in June of 2004. He used the loan for his education. Debtor and Murawski's relationship subsequently terminated, Murawski failed to make payments, and Creditor began seeking payments from Debtor.

On June 25, 2007, Debtor filed an adversary proceeding against Creditor Sallie Mae seeking to have the student loan debt determined dischargeable, and then moved for summary judgment, arguing that (1) the debt at issue was outside the coverage of 11 U.S.C. § 523(a)(8), and (2) even if the debt was within § 523(a)(8)'s coverage, it should be discharged as an undue hardship. On February 6, 2008, after a hearing on Debtor's motion for summary judgment, the Bankruptcy Court rejected Debtor's coverage argument and determined that her co-signer status did not take the obligation outside the statute. It also denied summary judgment on the issue whether the student loan debt should be discharged as an undue hardship, finding that factual issues remained for trial. (Bankr. Ct. Doc. No. 47, 9/22/08 Opin. Re: Discharge of Student Loan Oblig. at 1-2.)

On April 16, 2008, a trial was held. At the time of trial, the student loan balance was approximately $11,183.40, the repayment term was ten years, and the monthly payments were $138.57. (*Id.* at 2.) Plaintiff was a 24 year old, single mother of two young children, a daughter age one and a son age seven. She was employed as a registered nurse with the Children's Hospital of Michigan at the Detroit Medical Center. She worked 32 hours a

4

week and was considered full-time. She took home approximately $1,464.94 in net pay every two weeks. Healthcare coverage is provided by her employer with a portion deducted from her wages. She also received $780 in monthly child support for her son, but received no support for her daughter. Murawski is the daughter's father, but he has not provided any assistance, financial or otherwise, for the care of his daughter, and Debtor has not made any attempt to obtain a child support order against Murawski. (*Id.* at 2.)

As to Debtor's future financial situation and her ability to repay the student loan indebtedness, the Bankruptcy Court observed that she is "employed in the healthcare field, a rapidly growing area with many attendant opportunities for a registered nurse;" that "Debtor appears to have solid credentials, including a current position with a respected institution and a record of academic achievement in her nursing program which includes a 3.77 grade point average;" and that she is "healthy and has no physical or mental handicaps." (*Id.* at 6.)

As for expenses, the Bankruptcy Court observed that Debtor lived with her two children in a three-bedroom home in Plymouth, Michigan, with a monthly rent of $1,150, not including utilities. When she originally moved into the rental home, Debtor had a roommate with whom she shared the rent and other expenses. That roommate has since moved out and has not been replaced. (*Id.* at 3.) Debtor conceded at trial that suitable but less expensive housing could be found. (4/16/08 Tr. at 71.) The Bankruptcy Court thus found that Debtor had the potential of reducing her monthly rent payments by about $250. (9/22/08 Order at 4.) It further observed that if she moved closer to her work, she could also save on transportation costs by reducing her 80-mile roundtrip work commute. (*Id.*)

5

Finally, the Bankruptcy Court considered whether Debtor had made a good faith effort to repay the student loan indebtedness for which she had co-signed. It observed that Debtor is making payments on her own personal loans and has not sought to discharge them; that "she is, in effect, an accommodation endorser of the loan in question;" and that "Debtor testified that she did contact Sallie Mae to explore arrangements that might be made after she learned that Murawski had defaulted." (*Id.* at 6.)

In lieu of closing arguments, the Court allowed the parties to submit post-trial briefs. (*Id.* at 1.) Accordingly, the Bankruptcy Court took the matter under advisement, issuing an Opinion Regarding Discharge of Student Loan Obligation on September 22, 2008. In its Opinion, the Bankruptcy Court found that "[t]he passage of time and the instability of the economy and the possibility of interim changes since the trial" dictated that Debtor submit "a sworn statement of her present monthly income by category (gross and net together with backup documentation), together with a statement of all present continuing monthly expenditures by category, so that the Court can compare and contrast same with what was presented at the trial." (*Id.* at 7.) The Court stated that it would issue a decision after examining this requested information. (*Id.*)

A hearing was held on November 6, 2008, addressing the updated information provided by Debtor, and the Bankruptcy Court issued an order granting partial discharge of Debtor's student loan obligation. (Bankr. Ct. Doc. No. 54, 1/27/09 Order.) At the November 2008 hearing, Debtor testified as follows. Her net monthly income had increased to $3,643.48, and she had received a $6,502 tax refund for 2007. (11/06/08 Tr. at 10, 12.) Since the April 2008 trial, she had not made any efforts to obtain child support from her ex-fiance who was also the co-signer on the student loan indebtedness that she

sought to have discharged.  (*Id.* at 14.)  She had moved to another rental home with a higher monthly rent, did not search for a rental in lower rent areas like Westland, and still had no roommate. (*Id.* at 14-15, 32.)  Her transportation and food expenses had increased. (*Id.* at 17-19, 30.)  She had new credit card debt at Target and was still incurring expenses for cable and internet.  (*Id.* at 23-24.)

In its January 27, 2009 order, the Bankruptcy Court applied the *Brunner* test adopted by the Sixth Circuit for determining whether a debt creates an undue hardship.  *See In re Oyler*, 397 F.3d at 385 (adopting the three-prong test announced in *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)).  It determined that "it would constitute an undue hardship for Debtor to repay the student loan indebtedness in its original amount pursuant to its original terms;" that "Debtor possesses the ability to repay a material portion of the indebtedness without suffering undue hardship;" that $9,500 of the student loan indebtedness is non-dischargeable and shall be repaid at 5% annual interest within ten years; and that "all principal in excess of $9,500.00 and all other interest, penalties, expenses, attorneys' fees and other related costs are hereby held to be dischargeable pursuant to 11 U.S.C. § 523(a)(8)." (*Id.* at 1-2.)

Debtor moved for reconsideration of the Bankruptcy Court's partial discharge.  In response, the Court entered an order supplementing its findings of fact, denying Debtor's motion for reconsideration, and clarifying its January 27, 2009 order.  It observed that it had reviewed Debtor's amended schedules, considered her testimony at the November 6, 2008 hearing, and, based on that information and testimony about her legal fees, Target credit card balance, cable television bill, transportation and food expenses, and determined that these expenses no longer exist or can be immediately reduced while maintaining a minimal

7

standard of living.  (Bankr. Ct. Doc. No. 56, 2/10/09 Order at 2.)  Debtor's motion for reconsideration was denied because "Debtor is capable of paying approximately $100.00 per month towards the student loan indebtedness while leaving a small cushion in the monthly budget for any small unexpected expenses which may arise . . .  without suffering undue hardship."  (*Id.* at 2-3.)

Debtor then filed this timely appeal, and the Bankruptcy Court granted a stay of execution of its order pending the appeal.

## IV.  Analysis

### A.  Section 523(a)(8) Applies to Non-Student Co-Obligors of Student Loans

Despite Debtor's arguments to the contrary, the Bankruptcy Court did not err as a matter of law when it interpreted 11 U.S.C. § 523(a)(8) and held that this section applies to unrelated, non-student co-obligors like Debtor.[1]  Although the Sixth Circuit Court of

---

[1]Section 523(a)(8) provides in pertinent part that:

Exceptions to Discharge

(a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title doe not discharge an individual debtor from any debt –

\* \* \*

(8)  unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –

(A)(i)   an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; . . . .

11 U.S.C. § 523(a)(8)(A)(i).

Appeals has not specifically addressed this issue, the Bankruptcy Court's decision finds support in the only decision by a Circuit Court of Appeal addressing the issue and by the vast majority of recent decisions by the United States District Courts that have also addressed it. *See In re Pelkowski*, 990 F.2d 737 (3d Cir. 1993); *Hamblin v. Educ. Credit Mgmt. Corp. (In re Hamblin)*, 277 B.R. 676, 679-80 (Bankr. S.D. Miss. 2002) (collecting cases). These courts have interpreted § 523(a)(8) and have held, like the Bankruptcy Court here, that student loans are excepted from discharge under § 523(a)(8) even though the debtor is a non-student co-obligor.

The court in *In re Pelkowski* addressed and rejected arguments Debtor raises here. Similar to Debtor Cockels, the debtor in *Pelkowski* argued that § 523(a)(8) did not apply to her because she derived no educational benefits from the student loan sought to be discharged. 990 F.2d at 740. The *Pelkowski* court found "no support in the statutory language for any distinction based on the status of the borrower as student or as beneficiary of the education." *Id.* at 741. It explained:

> Section 523(a)(8) does not refer to a "student debtor" but applies to limit discharge of any "individual debtor" from "any debt" for a covered educational loan. In the absence of clearly expressed contrary legislative intent, the statutory language must be regarded as conclusive.

*Id.* The *Pelkowski* court further observed that § 523(a)(8), similar to other subsections of 523(a), "describes a particular kind of debt that is excepted from discharge," not the status of the obligor. *Id.* Citing numerous decisions from other federal courts, the *Pelkowski* court noted that its "rejection of any limitation of section 523(a)(8) based on the beneficiary of the loan or the recipient of the education is consistent with the weight of authority." *Id.* (citing cases).

Next, the *Pelkowski* court rejected another argument that Debtor raises here -- "because co-makers are not mentioned in section 523(a)(8)," Congress did not intend to include them "within the statute's ambit." *Id.* Rejecting the debtor's argument that it should find ambiguity from the statute's silence about the debtor's status as a non-student co-obligor, the *Pelkowski* court reasoned that "[i]f Congress had intended that section 523(a)(8) not apply to non-student co-makers of educational loan debt, we assume that it would have so stated." *Id.* at 742.

The *Pelkowski* court also rejected an argument similar to Debtor's alternative argument here -- that legislative history supports Debtor's position that § 523(a)(8) should not be read to include non-student co-signers. *Id.* The debtor in *Pelkowski* argued that legislative history addressed the perceived abuse of education loan programs by recipients of education benefits; not non-student co-signers. The *Pelkowski* court found the debtor's arguments unpersuasive. "Patently, an unrepaid loan will adversely affect the financial integrity of the educational loan program equally whether the defaulting debtor is the student or the student's co-obligor." *Id.* at 743. It was similarly unpersuaded by the debtor's argument that "[t]he absence of clear congressional intent to include co-signers" should resolve the statutory interpretation question in the debtor's favor. "The Supreme Court has cautioned against reading 'much into nothing. Congress cannot be expected to specifically address each issue of statutory construction which may arise.'" *Id.* at 743-44 (quoting *Albernaz v. United States*, 450 U.S. 333, 341 (1981)).

The *Pelkowski* court acknowledged that "section 523(a)(8) was enacted in response to the belief that students were taking advantage of the loan program" and that "[i]n the early 1970's, there was concern by legislators and the public about the perceived rise in

10

bankruptcy filings by students on the brink of lucrative careers." *Id.* at 742 (citing legislative history). It then agreed with the Sixth Circuit's conclusion in *Andrews University v. Merchant (In re Merchant)*, "that 'Congress enacted 11 U.S.C. § 523(a)(8) in an effort to prevent abuses in and protect the solvency of the educational loan programs.'" *In re Pelkowski*, 990 F.2d at 743 (quoting *In re Merchant*, 958 F.2d 738, 742 (6th Cir. 1992)).[2] It thus reasoned that the plain language of § 523(a)(8), relevant case law, and legislative history all support a conclusion that "[t]he congressional intent to eliminate debtor abuse of the education loan program would apply both to single makers of loan notes and to co-makers, whether students or their parents or other co-signers, as all may abuse the bankruptcy system or take advantage of legal loopholes." *Id.* at 744. This result "helps preserve the financial integrity of the student loan program, . . . the other clearly expressed legislative concern." *Id.* (internal citations omitted).

Addressing yet another point raised by Debtor Cockels here, the *Pelkowski* court observed that "[e]ven though the debt of the student co-signer would remain outstanding notwithstanding the co-signer's discharge, releasing co-signers could likely, if not necessarily, affect the economic viability of the student loan program. After all, the lenders seek the security of a non-student co-signer precisely because there is a commercial risk in looking only to the student for credit assurance." *Id.* (internal citation and parenthetical omitted). Finally, the *Pelkowski* court rejected the argument, similar to that made here, that

---

[2]The Sixth Circuit also concluded that "Congress elected to exclude certain obligations from the general policy of discharge based upon the conclusion that the public policy in issue, availability and solvency of educational loan programs for students, outweighs the debtor's need for a fresh start." *In re Merchant*, 958 F.2d at 740 (applying § 523(a)(8) and holding that educational bank loans guaranteed by private educational institutions and extensions of credit by such institutions constitute non-dischargeable education loans).

an interpretation of § 523(a)(8) that includes non-student co-signer student loan debt within its ambit "runs counter to the purposes of the Bankruptcy Code to release an honest debtor from financial burdens and to facilitate the debtor's unencumbered 'fresh start.'"   *Id.*  It explained that, because "Congress has revealed an intent to limit the dischargeability of educational loan debt," it has construed § 523(a)(8) "no more narrowly than the language and legislative history allow," and that concluded that section 523(a)(8) "applies to a co-signer of a note for the educational expenses of another."  *Id.* at 745.

This Court finds this reasoning persuasive and concludes that the Bankruptcy Court did not err as a matter of law when it reached the same conclusion.[3]

The Court now addresses Debtor's second issue on appeal.

## B. The Bankruptcy Court's Findings of Fact Were Not Clearly Erroneous and It Did Not Err as a Matter of Law in Concluding that $9,500 of the Debtor/Co-Obligor's Student Loan Indebtedness was Non-Dischargeable Under § 523(a)(8)

Section 523(a)(8) of the Bankruptcy Code allows the discharge of student loans when repayment "would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8).  In *In re Oyler*, the Sixth Circuit adopted the three-prong *Brunner* test for determining "undue hardship" first announced in a 1987 decision issued by the Second Circuit Court of Appeals and subsequently followed by most of the other Circuit Courts of Appeals.  397 F.3d 382, 385 (6th Cir. 2005) (citing *Brunner v. New York State Higher Educ.*

---

[3]Debtor concedes that §523(a)(8) has mutually exclusive subparts that will compel a determination of non-dischargeability if any one sub-part is applicable.  (Appellant's Br. at 5.)  In light of this Court's decision affirming the Bankruptcy Court's decision that sub-part (a)(8)(A)(i) applies, it is unnecessary to address Debtor's additional arguments about the applicability of the remaining sub-parts of § 523(a)(8).

12

*Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987)).  Application of the *Brunner* "undue hardship"

test requires consideration of the following three factors:

> (1)  that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*In re Oyler*, 397 F.3d at 385 (quoting *Brunner*, 831 F.2d at 396).

Despite Debtor Cockels assertions to the contrary,  the Bankruptcy Court did not

clearly err when it applied the *Brunner* test and found that, despite her current financial

obligations as a single mother of two young children and as a debtor on three student loans

of her own, Debtor Cockels could maintain a minimal standard of living for herself and her

dependents if forced to repay the $9,500 portion of student indebtedness found non-

dischargeable.  It was not clear error for the Bankruptcy Court to make this finding in light

of evidence that Debtor is a healthy 25 year old with no mental or physical disabilities, that

she was educated as an registered nurse, employed full-time as a pediatric R.N. with

Children's Hospital in the Detroit Medical Center, that her net pay had increased and was

likely to continue to do so.  It was not clear error to find that Debtor's current financial

situation would likely improve in light of evidence that the lease on her rented home expired

in 18 months and more affordable housing was available closer to her work thus allowing

her to decrease existing housing and commuting costs, that her cable expenses could be

eliminated, that her legal and Target credit card debt had or would soon be expired, that

she had not made any efforts to obtain child support from her daughter's father who was

also the co-signer on the student loan indebtedness sought to be discharged,  and that her

food expenses were excessive and could be decreased by eating out less.  Likewise, it was

13

not clear error for the Bankruptcy Court to find that Debtor Cockels had listed expenses which either "(a) no longer exist, or (b) can be immediately reduced while maintaining a 'minimal' standard of living." (2/10/09 Order at 2.) Finally, despite Debtor's arguments to the contrary, the Bankruptcy Court did credit Debtor for contacting Sallie Mae to explore arrangements that might be made on the student loan indebtedness after she learned that Murawski had defaulted. (9/22/08 Order at 6.)

Considering the above, it was not clear error for the Bankruptcy Court to find that, by eliminating or reducing her monthly expenses, Debtor Cockels had available income of approximately $117 to $167 per month that she could put toward the student loan obligation that she sought to discharge. (*Id.* at 2.) Nor was it clear error for the Bankruptcy Court to find that Debtor Cockels "was capable of paying approximately $100.00 per month towards the student loan indebtedness while leaving a small cushion in the monthly budget for any small unexpected expenses that may arise" being "mindful of the fact that unexpected necessary expenses arise each month in the rearing of young children." (*Id.* at 2-3.) Finally, it was not error for the Bankruptcy Court to conclude that forcing Debtor to pay a slightly reduced portion of the outstanding student loan indebtedness; i.e. $9,500 at 5% interest over 10 years, would not pose an undue hardship on Debtor and her dependents.

**V.    Conclusion**

For the foregoing reasons, the Bankruptcy Court's February 10, 2009 order is

AFFIRMED, and the Appellant's appeal is DISMISSED.


                    s/Nancy G. Edmunds_____
                    Nancy G. Edmunds
                    United States District Judge

Dated:  July 30, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record
on July 30, 2009, by electronic and/or ordinary mail.

                    s/Carol A. Hemeyer_____
                    Case Manager